# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDI RUSH,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>HIGHGROVE RESTAURANT, INC., et al.,<br><br>　　　　　　Defendants. | CASE NO. 10cv877 BEN (WMC)<br><br>**ORDER:**<br>• **GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>• **GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 12, 16.] |

Defendants' motion for summary judgment and Plaintiff's cross motion for summary judgment are before the Court. (Doc. Nos. 12, 16.) Numerous briefs have been filed by the parties both before and after Plaintiff's request for a Federal Rule of Civil Procedure 56(f)[1] continuance. For the reasons set forth below, the Court **GRANTS in part and DENIES in part** each parties' motion.

## BACKGROUND

Plaintiff is a paraplegic who is unable to walk or stand and requires the use of a wheelchair. Plaintiff alleges that she visited Denny's #7041 in Oceanside on April 13, 2010 and encountered numerous barriers preventing her from enjoying the goods and services of the restaurant. Plaintiff asserts claims for violation of the Americans with Disabilities Act ("ADA") and related state law claims.

---

[1] Former Rule 56(f) is now Rule 56(d).

Before discovery in the case had commenced, Defendants filed a motion for summary judgment asserting that the violations alleged in Plaintiff's First Amended Complaint ("FAC") had either been fixed or that the violations never existed. (Doc. No. 12.) Plaintiff filed an Opposition to Defendants' motion and her own cross motion for summary judgment. (Doc. Nos. ¶¶ 15-16.) The Court then granted Plaintiff's request for a Federal Rule of Civil Procedure 56(f) continuance to allow Plaintiff to obtain necessary discovery. (Doc. Nos. 21.) The parties then filed additional oppositions and replies to the motions. (Doc. Nos. 25, 31, 32, 36, 37, 38.)

**DISCUSSION**

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party meets this burden, the burden then shifts to the opposing party to set forth specific facts showing that a genuine issue remains for trial. *Id.* at 256-57.

A moving party can meet its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or [by] show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this burden of production, the burden shifts to the nonmoving party to "produce enough evidence to create a genuine issue of material fact." *Id.* at 1103 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Evidence raises a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there are genuine issues of material fact, the Court must view the evidence in the light most favorable to the non-moving party. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998).

Defendants' motion for summary judgment is based on the correction of all actual ADA violations. Defendants argue that all ADA violations have been corrected and Plaintiff's ADA claim and the supplemental state law claims should be dismissed. Plaintiff acknowledges that

most of the violations she encountered have been corrected, but disputes others and attempts to raise new violations identified by an expert, but not included in Plaintiff's FAC.

Plaintiff moves for summary judgment on her ADA claim based on the accessible parking spaces' access aisles and van-accessible signage as well as her state law claim under the Unruh Civil Rights Act for the violations encountered on April 13, 2010.

The potential mootness of Plaintiff's ADA claim implicates two issues: (1) whether Plaintiff has standing to pursue her ADA claim and (2) whether the case should be dismissed if all the ADA violations set forth in the FAC have been corrected. As discussed below, Plaintiff has standing to pursue her ADA claim and Defendants have not established that all the ADA violations set forth in the FAC have been corrected. The Court also finds that Plaintiff is entitled to summary judgment on her ADA claim with regard to the parking lot access aisles and her claim under the Unruh Civil Rights Act. Additionally, neither party is entitled to summary judgment on Plaintiff's ADA claim.

# I. ADA Claim

## A. Plaintiff's Standing

"[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). But, "the 'Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act.'" *Id.* (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)).

To establish her standing, Plaintiff "must demonstrate that [she] suffered an injury-in-fact, that the injury is traceable to [Defendants'] actions, and that the injury can be redressed by a favorable decision. In addition, to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [she] must demonstrate a real and immediate threat of repeated injury in the future." *Id.* (internal citations and quotation marks omitted). As the party invoking the Court's jurisdiction, Plaintiff "bears the burden of establishing these elements."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Defendants appropriately do not challenge the injury-in-fact or causation elements,[2] but rather, Defendants argue the redressability element cannot be met because Defendants have corrected the ADA violations. Plaintiff certainly had standing when she filed suit,[3] but "a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating [her] standing to sue at each stage of the litigation." *Chapman*, 631 F.3d at 946 (citing *Lujan*, 504 U.S. at 560). At the summary judgment stage, Plaintiff "must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).

For purposes of evaluating Plaintiff's standing, the Court must consider not just the evidence in support of Plaintiff's initial allegations, but also evidence of additional violations identified through discovery. *Doran*, 524 F.3d at 1044-47 (finding that in evaluating a plaintiff's standing, the Court must consider all barriers related to a plaintiff's disability, "including those identified in [a plaintiff's] expert site inspections."). Plaintiff has put forth evidence, her expert report and her own declaration, of ADA violations at Defendants' location. Taking this evidence to be true, the Court finds that Plaintiff has Article III standing.

**B.     ADA Violations**

"The ADA was enacted 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" *Chapman*, 631 F.3d at 944 (quoting 42 U.S.C. § 12101(b)(2)). In addition to prohibiting obviously exclusionary conduct, "the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." *Id.* at 945 (quoting 42 U.S.C. § 12182(a)).

///

---

[2] Plaintiff's declaration outlines the numerous violations she personally encountered at the restaurant on April 13, 2010 and how they relate to her disability. *Cf. Oliver v. Ralph's Grocery Co.*, __ F.3d __, 2011 WL 3607014, at *3 (9th Cir. 2011) (citing *Chapman*, 631 F.3d at 955).

[3] In addition to Plaintiff's declaration identifying the violations she encountered, Defendants acknowledge numerous ADA violations that were corrected after Plaintiff's visit to the location.

"In the case of newly constructed facilities, [like the one at issue here], compliance with the ADA's antidiscrimination mandate requires that facilities be 'readily accessible to and usable by individuals with disabilities.'" *Chapman*, 631 F.3d at 945 (quoting 42 U.S.C. § 12183(a)(1)). This standard requires compliance with the Attorney General's standards for accessible design, detailed standards known as the ADA Accessibility Guidelines ("ADAAG"). *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1171 (9th Cir. 2010) (citing 28 C.F.R. 36.406(a)); *see also Chapman*, 631 F.3d at 945. Failure to comply with the ADAAG "constitutes prohibited 'discrimination for purposes of' the Disabilities Act." *Antoninetti*, 643 F.3d at 1171 (quoting 42 U.S.C. § 12183(a)); *see also Chapman*, 631 F.3d at 945 ("The ADAAG provides the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations.").

### 1. ADA Claim is Limited to Allegations in the FAC

The Court only considers the violations alleged in Plaintiff's FAC. *Oliver*, 2011 WL 3607014, at *5 (finding that "for purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere"); *see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (affirming district court's finding that Plaintiff failed to comply with the notice requirements of Federal Rule of Civil Procedure 8(a)(2) — fair notice of the Plaintiff's claims and the grounds upon which it rests — for ADA violations raised for the first time in opposition to summary judgment). *Doran v. 7-Eleven* does not require a different conclusion. *Oliver*, 2011 WL 3607014, at *5 (explaining that *Doran*, 524 F.3d at 1047, only addressed standing and did not address compliance with Rule 8). As discussed above, Plaintiff has standing with regard to these new violations, but they are absent from the FAC and Plaintiff never sought leave to file an amended complaint. Additionally, the Court notes that the new violations identified were subsequently corrected.

### 2. ADA Violations

Plaintiff's FAC alleges seventeen violations of the ADA. All but two of these violations have been corrected. An ADA claim becomes moot once the defendant corrects the violation

because "[d]amages are not recoverable under Title III of the ADA — only injunctive relief is available for violations of Title III." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). Accordingly, Plaintiff's ADA claim can only proceed if there is a genuine issue of material fact concerning a continuing ADA violation or if Plaintiff establishes a continuing violation.

Plaintiff concedes that all entrance violations identified in the FAC were corrected except for the waste receptacle obstructing the entrance door clearance. Plaintiff does not claim that the concrete waste receptacle is still obstructing the entrance door clearance, but rather, Plaintiff claims that it is movable. However, following Plaintiff's allegation that the concrete receptacle could be moved to again obstruct the entrance clearance, Defendants removed it entirely. Plaintiff also concedes that all violations related to the restroom, identified in the FAC, were corrected except for the covering of water pipes under the sink.[4] However, Defendants have since submitted evidence that the pipes are covered and acknowledged the need to continually check for compliance.

Defendants are entitled to summary judgment on these violations because the violations have been remedied and the ADA only provides for injunctive relief. *Wander*, 304 F.3d at 858. However, Plaintiff's FAC also identifies violations in the accessible parking that have not been corrected. Plaintiff claims that the van accessible signage and the slope in the access aisles for the accessible parking violate the ADA.[5]

### a. Access Aisle Slope

As to the slope of the access aisles for the parking spaces, Plaintiff is entitled to summary judgment on this issue. ADAAG 4.6.3 specifically requires "[p]arking spaces and access aisles shall be level with the surface slope not exceeding 1:50 (2%) in all directions."

///
///

---

[4] Although Plaintiff asserts that Defendants' addition of a U-shaped handle to the accessible stall is not in conformance with the California Building Code, Plaintiff concedes that the addition brings Defendants into compliance with the ADA on this issue.

[5] Plaintiff's allegation that the location of a disabled parking space required users to pass behind vehicles was withdrawn under the threat of Rule 11 sanctions.

Defendants rely exclusively on their expert report on this issue. Defendants' expert agrees that the parking access aisles do not comply with current requirements because the flare sides of the ramps exceed the 2% maximum slope for access aisles and are within the access aisles. (Defs.' Mot. for Summ. J., Ex. 2.) However, he goes on to claim that the access aisles need not comply with current requirements because the ramps encroachment into the access aisles was acceptable in 1997, when the building was constructed, and "it would not be 'readily achievable' to demonlish the existing access aisle ramps and sidewalk in front of the disabled parking spaces to create current standard path of travel and ramping to and from the parking area." (*Id.*) He also claims that the existing ramps "are readily accessible to and usable by persons with disabilities." (*Id.*) Putting aside whether this assessment is factually accurate, there are at least two issues of law that undermine this position.

First, whether compliance with the ADAAG is "readily achievable" has no application in this case.

> In enacting the ADA, Congress adopted two distinct systems for regulating building accessibility: one to apply to existing facilities (those designed and constructed for occupancy before January 26, 1993) and another to apply to later-constructed facilities. 42 U.S.C. §§ 12183(a)(1) and 12182(b)(2)(A)(iv). The grandfathered facilities must remove barriers to accessibility only to the extent that such removal is '*readily achievable*.'

*Long v. Coast Resort, Inc.*, 267 F.3d 918, 923 (9th Cir. 2001) (emphasis added). Because the parties agree this is not a grandfathered facility, the readily achievable standard does not apply. Facilities constructed after 1993, like the one at issue here, are subject to an entirely different standard. *See id.* New constructions must "be 'readily accessible and usable by individuals with disabilities'" and the only statutory defense for non-compliance with this standard is structural impracticability. *Id.* (quoting 42 U.S.C. § 12183(a)(1)). The readily achievable standard Defendants claim to have complied with is "a much less stringent standard" than the structural impracticability that actually applies. *See Molski v. Foley Estates Vineyard & Winery, LLC*, 531 F.3d 1043, 1051 (9th Cir. 2008) (Fernandez, F., concurring and dissenting) (explaining the significance of the different standards). "Full compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent

the incorporation of accessibility features." 28 C.F.R. § 36.401(c); ADAAG 4.1.1(5)(a). Defendants did not plead structural impracticability as an affirmative defense and have not put forth any evidence that bringing the parking access aisles into compliance with ADAAG 4.6.3 would be structurally impracticable.

Second, Defendants' assertion that the facility is readily accessible to and usable by those with disabilities, while acknowledging the lack of compliance with ADAAG 4.6.3 is problematic. A facility is not "readily accessible to and usable by individuals with disabilities" if it does not comply with the ADAAG. *Antoninetti*, 643 F.3d at 1171 (citing 28 C.F.R. § 36.406(a)). Failure to comply with the ADAAG "constitutes prohibited 'discrimination for the purposes of' the Disabilities Act." *Id.* (citing 42 U.S.C. § 12183(a)).

Defendants' expert acknowledges that the parking access aisles do not comply with ADAAG 4.6.3 and, as discussed above, Defendants have not put forth any evidence of structural impracticability as required for a new construction. Accordingly, Plaintiff is entitled to summary judgment on this portion of her ADA claim.[6]

### b.   Van Accessible Signage

As to the van accessible signage, neither party is entitled to summary judgment on this issue. Plaintiff's FAC alleges the van accessible signage is incorrect. Defendants' initial expert report indicated that the violation was remedied by the addition of minimum fine and tow away signs. Defendants do not claim to have added a "Van-Accessible" sign. Plaintiff's expert report, completed after Defendants added the new signage indicates that van accessible signage is missing in violation of ADAAG 4.6.4. ADAAG 4.6.4 requires that "[s]paces complying with 4.1.2(5)(b) shall have an additional sign 'Van-Accessible' mounted below the symbol of accessibility." Defendants' follow-up expert Declaration, completed after Plaintiff's, indicates "[t]he signage posted at the 'Van Accessible' parking space is in full compliance with the ADA." (Defs.' Opp'n to Pl.'s Supplement to Cross Mot. for Summ. J., Decl. of Phillip Kaplan.) But, the expert makes

---

[6]Because the parties have not addressed the propriety of injunctive relief, the only relief available for a violation of the ADA, or how injunctive relief might best be imposed for this particular violation, the Court reserves any judgment with regard to injunctive relief.

this assertion in reliance on his prior report that includes a picture of the signage lacking a Van-Accessible sign, acknowledges the ADAAG requires two separate signs, and admits Defendants only have one sign. (Defs.' Mot. for Summ. J., Ex. 2.) The expert goes on to claim that Defendants have met the intent of the ADA because all the required language is there. (*Id.*)

It does not appear that all the required language is present based on the photos provided by Defendants' expert. His initial report, which he relies on in his follow-up report, includes a picture showing an accessibility sign, a minimum fine sign, and a tow sign. "Van Accessible" is not visible on any of the signs. The Court is perplexed how the expert can claim that all the required language is there when the language specifically required by ADAAG 4.6.4, "Van Accessible," is lacking.[7] Additionally, even if the language were present, the ADAAG requires two signs and Defendants admit that they only have one. This lack of compliance with the dictates of the ADAAG cannot be ignored in reliance on the intent of the ADA because "'obedience to the spirit of the ADA' does not excuse noncompliance with the ADAAG's requirements. The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Chapman*, 631 F.3d at 945-46 (relying on *Long*, 267 F.3d at 923); *see also Chapman,* 631 F.3d. at 947 (finding any violation of the ADAAG that relates to a plaintiff's disability is discrimination under the ADA).

Despite the lack of a proper sign as required by ADAAG 4.6.4, Plaintiff has not established that she is entitled to summary judgment on this issue because the ADAAG only requires the addition of the "Van Accessible" sign for parking spaces complying with 4.1.2(5)(b). ADAAG 4.1.2(5)(b) only requires "[o]ne in every eight accessible spaces, but not less than one, . . . shall be designated 'van accessible' as required by 4.6.4." It is not clear from the record that this particular space must be a van accessible space that requires designation as van accessible under ADAAG 4.6.4.

---

[7]As to Plaintiff's claim that a violation of the California Manual of Uniform Traffic Control Devices ("MUTCD") constitutes a violation of the ADA, the Court does not find the argument persuasive, and the same argument has recently been rejected by the Ninth Circuit. *Oliver*, 2011 WL 3607014, at *6. Accordingly, Plaintiff's claim may not proceed on this basis.

1   Genuine issues of material fact preclude summary judgment in favor of Plaintiff with
2 regard to the van accessible signage. Plaintiff is entitled to summary judgment on her ADA claim
3 with regard to the slope of the parking lot access aisles. Defendants are entitled to summary
4 judgment with regard to the corrected violations outlined above.

5 **II.     State Law Claim**

6   Plaintiff moves for summary judgment on her claim under California's Unruh Act,
7 California Civil Code § 51. A violation of the ADA also constitutes a violation of § 51. CAL. CIV.
8 CODE § 51(f) ("A violation of the right of any individual under the Americans with Disabilities Act
9 of 1990 shall also constitute a violation of this section."); *see also Molski v. M.J. Cable, Inc.*, 481
10 F.3d 724, 731 (9th Cir. 2007) ("Any violation of the ADA necessarily constitutes a violation of the
11 Unruh Act."). Section 51(f) provides "disabled Californians injured by violations of the ADA with
12 the remedies provided by section 52." *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 665 (2009). As
13 discussed above, Defendants violated the ADA. Because Plaintiff has established an ADA
14 violation, she has also established a violation of the Unruh Act.[8]

15   Unlike the ADA, however, the Unruh Act provides for monetary damages for violations.
16 *M.J. Cable*, 481 F.3d at 731. Section 52 provides that a party "is liable for each and every offense
17 for the actual damages . . . but in no case less than four thousand dollars ($4,000)." *Munson,* 46
18 Cal. 4th at 667 (quoting § 52(a)). Plaintiff "need not prove she suffered actual damages to recover
19 the independent statutory damages of $4,000." *M.J. Cable,* 481 F.3d at 731 (citing *Botosan v. Paul*
20 *McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000)). Here, Plaintiff only seeks the $4,000 statutory
21 minimum. Because Plaintiff has established that she encountered ADA violations on April 13,
22 2010, including those subsequently corrected, the Court finds that she is entitled to the minimum
23 $4,000 in statutory damages under the Unruh Act.[9]

24 ///

25

26 ─────────────

27   [8] Additionally, the Court notes that Plaintiff encountered other ADA violations on her April 13, 2010 visit that have since been corrected.

28   [9] The Court does not address Plaintiff's suggestion that the Court impose the entire $4,000 on Defendant Hom as the landlord because Defendants have not addressed this issue.

**III.     Attorney's Fees**

Defendants request attorney's fees under 28 U.S.C. § 1927 and the Court's inherent powers, based primarily on the assertion that Plaintiff improperly pursued this litigation after Defendants' claimed to have corrected all ADA violations. However, as discussed above, Defendants did not correct all ADA violations and Plaintiff did not pursue this litigation recklessly or in bad faith. *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (requiring "a finding that counsel acted recklessly or in bad faith" to impose sanctions under § 1927 and a finding of conduct tantamount to bad faith to impose sanctions under the Court's inherent powers). Defendants' request for attorney's fees is **DENIED**.[10]

**CONCLUSION**

The parties' motions for summary judgment are **GRANTED in part and DENIED in part** as discussed above. Defendants' request for attorney's fees is **DENIED**.

**IT IS SO ORDERED.**

DATED:  September 12, 2011

Hon. Roger T. Benitez
United States District Judge

---

[10] The Court's denial of Defendants' request for attorney's fees does not preclude Defendants from seeking a reduction in any attorney's fee award Plaintiff might eventually seek.